# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Senior Judge Marcia S. Krieger

Civil Action No. 20-cv-00098-MSK

**CLAUDE JOSEPH ROUBICEK,**

    Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

## OPINION AND ORDER REVERSING AND REMANDING
## THE COMMISSIONER'S DECISION

**THIS MATTER** comes before the Court on the Plaintiff's Complaint **(#1)**, the Plaintiff's Opening Brief **(#16)** and the Defendant's Response **(# 16)**.  No Reply was filed.  For the following reasons, the Commissioner's decision is reversed, and the matter is remanded for further proceedings.

## I.  JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g).

## II.  BACKGROUND

### A.  Procedural History

Plaintiff Claude Roubicek ("Mr. Roubicek") seeks judicial review of a final decision by the Defendant Commissioner ("Commissioner") denying both his claim for disability insurance benefits ("DIB") and application for supplemental security income ("SSI") under the Social

1

Security Act.   In December 2016, Mr. Roubicek filed for both DIB and SSI, claiming he became disabled as of July 17, 2014.   **(#11 at 10, 197)**.   On review, the Social Security Administration ("SSA") denied Mr. Roubicek's applications finding him not to be disabled.   **(#11 at 99, 116 )**.   Mr. Roubicek made a written request for a hearing before an Administrative Law Judge ("ALJ"), and an hearing was conducted on October 30, 2018 in Denver, Colorado.   **(#11 at 55)**.   Then, on January 16, 2019, the ALJ again issued Mr. Roubicek an unfavorable Decision ("Decision").   **(#11 at 10)**.   Mr. Roubicek appealed the Decision to the Appeals Council asserting it was not supported by substantial evidence.   **(#11 at 1)**.   On November 15, 2019, the Appeals Counsel denied his Request for Review.   **(#11 at 1-6)**.   Mr. Roubicek now appeals the final agency action to this Court.   *See Threet v. Barnhart*,   353 F.3d 1185, 1187 (10th Cir. 2003) (stating that when the Appeals Council denies further review, the ALJ's decision is deemed the final decision of the Commissioner).

**B.    Pertinent Factual Background**

The Court offers a summary of the facts here and elaborates as necessary in its discussion.   Also, because the dispositive issue in this appeal concerns the weight given to a treating physician's opinion as to Mr. Roubicek's impairments, the Court summarizes only the medical evidence relevant to its decision.

At the time of his alleged onset of disability, Mr. Roubicek was 49 years old.   **(#11 at 25)**.   He previously worked as a taxi driver but has not worked since June 2014 when he was involved in a motor vehicle accident.   Following the accident, Mr. Roubicek reported that his employer fired him because he was disabled.   **(#11 at 16, 25, 59-60)**.   Since that time, Mr. Roubicek stated he was involved in two more automobile accidents, one in 2015 and one in

2016.  **(#11 at 16)**.

  The medical records confirm that Mr. Roubicek suffers from morbid obesity, chronic back pain, anxiety, post-traumatic stress disorder ("PTSD"), migraine headaches, and hyperthyroidism.  **(#11 at 831)**.  In October 2016, Kimberly Bentrott, M.D., began treating Mr. Roubicek on a regular basis.  **(#11 at 649)**.  Mr. Roubicek told Dr. Bentrott he is disabled due to mental health issues and chronic headaches and pain caused by injuries suffered in various motor vehicle accidents.  **(#11 at 651)**.  More specifically, in 2014, Mr. Roubicek recalled that he was involved in a significant car accident in 2014 that rendered him unable to work.  Since this accident, Mr. Roubicek developed increased anxiety, PTSD, and panic attacks.  **(#11 at 651)**.  Dr. Bentrott noted concerns with Mr. Roubicek's thyroid and recommended lab testing, a sleep study, and MRI testing.  **(#11 at 653-660)**.  In December 2016, Dr. Bentrott saw Mr. Roubicek for a follow-up appointment.  The records indicated Mr. Roubicek's daily headaches were worsening.  **(#11 at 654)**.  In March 2017, Mr. Roubicek returned for another appointment with Dr. Bentrott.  Results from the sleep study indicated Mr. Roubicek suffers from severe obstructive sleep apnea, causing him to awaken four times per night, every two hours.  **(#11 at 670)**.  The record also indicates Mr. Roubicek was taking Zoloft, Propranolol, and Lorazepam for his headaches, anxiety and panic attacks.  **(#11 at 654-662)**.  Treatment notes from April 2017 indicate Mr. Roubicek's panic disorder and anxiety were improving with treatment.  Mr. Roubicek reported no agitation or racing heart and that his headaches were improving.  **(#11 at 664-665)**.  Dr. Bentrott adjusted his medications to include "rare use of Ativan".  **(#11 at 664)**.  At a visit in February 2018, Mr. Roubicek reported his anxiety is "up and down" and he still experiences panic attacks.  He also stated he cannot walk a mile without sitting down due to

back pain and muscle spasms.  **(#11 at 783-784)**.   Dr. Bentrott also noted that recent lab results indicated the onset of diabetes.   Thus, she started Mr. Roubicek on Metformin to help control his blood sugars.  **(#11 at 785)**.   Mr. Roubicek also reported his anxiety was "doing great" and his headaches were improving.   Dr. Bentrott suspected that these reported improvements were related to the stabilization of Mr. Roubicek's thyroid from medication.  **(#11 at 787)**.   An April 2018 treatment note indicated Mr. Roubicek's anxiety was well controlled and he had not needed to take Ativan "in over a month".  **(#11 at 789)**.   Dr. Bentrott noted a slight decline in kidney function based on Mr. Roubicek's lab results and ordered follow-up testing to be reviewed at his next appointment.  **(#11 at 791)**.   At appointments in both June and July, 2018, Mr. Roubicek reported an increase in anxiety and headaches, and upon examination, Dr. Bentrott observed Mr. Roubicek's anxious and/or nervous demeanor.  **(#11 at 794-799)**.

On September 17, 2018, Dr. Bentrott completed a "Medical Source Statement" form for Mr. Roubicek and opined that his physical and mental impairments precluded him from performing "even low stress work".  **(#11 at 831-836)**.   Dr. Bentrott noted Mr. Roubicek's diagnoses of anxiety, chronic back pain, morbid obesity, PTSD, chronic migraine headaches, and hyperthyroid disease.   She indicated Mr. Roubicek experiences (i) daily back pain that is exacerbated by standing, walking, and bending and (ii) multiple (1-3) headaches per day. Further, Dr. Bentrott noted that Mr. Roubicek takes various medications that cause "intermittent fatigue" and "sedation", which could affect his ability to work.  **(#11 at 831)**.   The form also noted Mr. Roubicek walks with a cane due to "insecurity, pain, and weakness".  **(#11 at 834)**. As to Mr. Roubicek's functional limitations, Dr. Bentrott opined he: (i) can walk less than one city block without rest or severe pain; (ii) can sit 30-60 minutes at one time; (iii) can stand 30

minutes at one time; (iv) can stand/walk a total of less than two hours in an 8-hour work day; (v) would need to take daily, unscheduled breaks from 1-2 hours during the work day due to his headaches, back pain, panic attacks, and chronic fatigue; (vi) can frequently lift 10 pounds, occasionally lift 20 pounds, and never lift 30 pounds; (vii) can occasionally climb stairs, rarely stoop or bend, and never twist, crouch or squat, or climb ladders.  **(#11 at 832-834)**.  Dr. Bentrott also opined Mr. Roubicek would be "off-task" (meaning his symptoms would interfere with his "attention and concentration needed to perform even simple work tasks") for at least 25% of every work day.  She also opined that due to his impairments, Mr. Roubicek would miss more than four days per month of work.  **(#11 at 836)**.  Finally, Dr. Bentrott opined that "environmental conditions as well as stress trigger [Mr. Roubicek's] headaches" and his "poor ability to walk" would affect his ability to work at a regular job.  **(#11 at 836)**.

In September 2018, Dr. Bentrott noted that Mr. Roubicek's "ability to participate in gainful employment" is limited by his "chronic headaches, anxiety with panic disorder, chronic back pain, morbid obesity, and mobility issues".  **(#11 at 858)**.  Dr. Bentrott opined that a "traditional job would be difficult for [Mr. Roubicek] to participate in given the combination of his physical and psychological conditions."  **(#11 at 858)**.

In September 2016, neurologist Laura Friedlander, M.D. began treating Mr. Roubicek for his headaches.  **(#11 at 747)**.  At this visit, Mr. Roubicek recalled his 2014 automobile accident where his head "hit the windshield".  Mr. Roubicek stated that since the accident, he developed back pain and migraine headaches.  He described the headaches, which occur daily for 15-20 minutes as "throbbing in nature" and exacerbated by bright lights,  **(#11 at 748)**.  Dr. Friedlander recommended regular exercise, meals, and sleep along with limited caffeine and

increased water intake.  **(#11 at 749)**.  She also prescribed Amitriptyline.  In December 2016, Dr. Friedlander again saw Mr. Roubicek.  He reported being in another motor vehicle accident on December 10, 2016, exacerbating his headaches, which he described as "constant sharp pain" that lasts "for as long as he is exposed to bright lights and occurs daily."  **(#11 at 753)**.  In March 2017, Dr. Friedlander saw Mr. Roubicek for a follow-up appointment.  Dr. Friedlander increased Mr. Roubicek's dose of Propranolol, continued the Amitriptyline, and recommended blue light blocking glasses.  **(#11 at 757)**.  Although Mr. Roubicek continued to report having daily headaches, he noted that he no longer awakens in the morning with a headache.  **(#11 at 758)**.  Dr. Friedlander ordered MRI testing of the brain and spine.  The brain MRI was "unremarkable", and the spine MRI revealed "multilevel degenerative disc disease and facet arthrosis.  Mild spinal canal narrowing at C5-C6 and C6-C7.  Moderate right C6-C7 foraminal stenosis.  Mild left foraminal narrowing C5-C7."  **(#11 at 759, 761)**.  Dr. Friedlander saw Mr. Roubicek again in July 2017.  Consistent with previous appointments, he reported having daily headaches that felt like a constant sharp pain.  Dr. Friedlander noted that Mr. Roubicek's obstructive sleep apnea was likely contributing to his headaches.  Mr. Roubicek reported participating in a sleep study, was taking oxygen at night, and was awaiting a fitting for a CPAP machine.  Mr. Roubicek also stated he had been undergoing massage therapy, which he felt was helpful.  **(#11 at 762-767)**.  In November 2017, Mr. Roubicek had another appointment with Dr. Friedlander for treatment of his "post-traumatic headache[s]".  **(#11 at 768)**.  Mr. Roubicek reported daily headaches, difficulty with anxiety, and difficulty sleeping.  Dr. Friedlander adjusted his medications (prescribed Gabapentin for headaches and anxiety and decreased Amitriptyline) and considered increasing his Propranolol.  Dr. Friedlander also recommended

blue light blocking glasses.   However, Mr. Roubicek reported using sunglasses to avoid bright lights which exacerbated his headaches[1].   **(#11 at 768-770)**.   Treatment notes from February 2018 indicated Mr. Roubicek was still experiencing daily headaches and sleeping poorly and was recently diagnosed with diabetes.   Dr. Friedlander adjusted his medications.   **(#11 at 774-779)**.

On September 19, 2018, Dr. Friedlander completed a Medical Source Statement for Mr. Roubicek.   **(#11 at 731)**.   Dr. Friedlander opined Mr. Roubicek was capable of low stress work but would be "off task" 10% of a typical work day.   However, Dr. Friedlander included the notation "unclear" next to her "10%" opinion.   **(#11 at 735)**.   Dr. Friedlander also opined that Mr. Roubicek's impairments cause him both "good days" and "bad days," and that he would likely miss "more than four days per month" from full time work.   Again, Dr. Friedlander noted "unclear" next to this opinion   **(#11 at 735)**.

**C.   The ALJ's Decision**

SSI is available to an individual who is financially eligible, filed an application for SSI, and is disabled as defined in the Act.   42 U.S.C. § 1382.   An individual is eligible for DIB under the Act if he or she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act.   42 U.S.C. § 423(a)(1).   An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his [or her] previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy …."   42 U.S.C. § 423(d)(2)(A).

---

[1]   At the hearing, Mr. Roubicek explained he had not acquired blue light blocking glasses due to the cost.   **(#11 at 73)**.

On January 16, 2019, the ALJ issued a Decision unfavorable to Mr. Roubicek. Using the conventional multi-step analytical tool, the ALJ found at step one that Mr. Roubicek had not engaged in substantial gainful activity since July 17, 2014, the alleged onset date. **(#11 at 12)**. At step two, the ALJ found Mr. Roubicek had the following severe impairments: generalized anxiety disorder, PTSD, degenerative disc disease, obesity, sleep apnea, and headaches. **(#11 at 12)**.

At step three, the ALJ found Mr. Roubicek did not have an impairment that met or medically equaled the presumptively disabling conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. **(#11 at 13-15)**. In making this finding, the ALJ considered Mr. Roubicek's mental impairments, finding he had (i) moderate limitations in the activities of "concentrating, persisting, or maintaining pace" and "interacting with others" and (ii) mild limitations in the activities of "adapting or managing oneself" and "understanding, remembering, or applying information".[2] **(#11 at 14-15)**.

The ALJ then assessed Mr. Roubicek's RFC and determined that he:

> has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. He is not limited in balance. The claimant can frequently stoop, occasionally kneel, frequently crouch, and occasionally crawl. The claimant must avoid unprotected heights, dangerous moving machinery, and vibrating tools.

---

[2] The ALJ's analysis followed the process for evaluating mental impairments, and the categories of such impairments, as prescribed by the Commissioner's regulations. These include the "psychiatric review technique," or "PRT," and the so-called "paragraph B" and "paragraph C" criteria for describing adult mental disorders. *See generally* 20 C.F.R. §§ 404.1520a(c)–(d); *see also* Social Security Ruling 96-8P, 1996 WL 374184, at *4 (July 2, 1996). The regulations identify four functional areas in which the ALJ will rate the degree of a claimant's functional limitations, including: (1) the ability to understand, remember or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; and (4) the ability to adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3).

> He must avoid concentrated exposure to pulmonary irritants such as dust, fumes, gases, odors, and poor ventilation.  He can understand, remember, and carry out simple and low end detailed instructions that can be learned in 3 months or less with no direct interaction with the general public and avoiding work in crowded settings such as stores, restaurants, and theaters.  The claimant must avoid bright lights or be permitted to wear blue light blocking lenses in the work place.

**(#11 at 15-16)**.  In crafting Mr. Roubicek's RFC, the ALJ gave "little weight" to one portion of Dr. Bentrott's opinion and "no significant weight" to another portion.  He also gave "little weight" to Dr. Friedlander's opinion.  **(#11 at 23-24)**.  At step four, the ALJ found Mr. Roubicek unable to perform his past relevant work as a taxi driver and thus proceeded to step five.  **(#11 at 25)**.  At step five, based on the testimony of the vocational expert ("VE"), the ALJ concluded that, considering Mr. Roubicek's age, education, work experience, and RFC, he could perform a reduced range of light, unskilled jobs in the national economy such as: office helper, garment sorter, and housekeeper.  **(#11 at 26)**.

The ALJ therefore found Mr. Roubicek was not disabled as defined by the Social Security Act.  **(#11 at 26-27)**.

### III.   STANDARD OF REVIEW

Though the Court's review is *de novo*, the Court must uphold the Commissioner's decision if it is free from legal error and the Commissioner's factual findings are supported by substantial evidence.  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). Substantial evidence is evidence a reasonable person would accept to support a conclusion, requiring "more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).  The Court may not reweigh the evidence, it looks to the entire record to determine if substantial evidence exists

to support the Commissioner's decision.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Thus, here, the question before the Court is whether there is substantial record evidence to support the ALJ's determination that Mr. Roubicek could perform light work with certain limitations.

## IV.   DISCUSSION

Mr. Roubicek asserts one broad issue in his appeal – that the ALJ's Decision did not properly weigh the medical opinion evidence and failed to state valid reasons for rejecting numerous treating providers' opinions.   Although Mr. Roubicek challenges the Decision's handling of the opinions from multiple providers (including opinions from non-acceptable medical sources[3]), because the first argument is dispositive as to treating physician, Dr. Bentrott, and requires remand, the Court will focus on it.

### A.   The ALJ's Evaluation of Dr. Bentrott's Opinion

A treating physician's opinion is generally entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."   *Romo v. Commissioner*, 748 Fed. Appx. 182, (10th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2));[4]  *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007).   When discounting the opinion of a treating physician,

---

[3]   These non-acceptable medical sources include Mr. Roubicek's chiropractor, DeLoy Blanchard, D.C. and counselor, Michelle Battle, L.P.C., L.A.C.  (**#16**).   In light of the Court's findings in this Opinion, it declines to address these opinions further.

[4]   Pursuant to a change in the Social Security Administration's regulations, effective March 27, 2017, treating physician opinions will no longer be given controlling weight.   However, the prior rule remains applicable to claims—like Mr. Roubicek's—filed before that date. Rescission of Social Security Rulings 96–2P, 96–5P, and 06–3P, 2017 WL 3928298, at *1 (2017).

the ALJ must provide sound reasons to do so.  20 C.F.R. § 404.1527(d)(2).  For example, the ALJ may find that the treating physician has contradicted his or her own assessments elsewhere, or where other physicians' opinions are supported by superior medical evidence.  *See id.*.  However, even if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference, and the ALJ must consider:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (internal quotations omitted).  In applying these factors, the ALJ must make findings and reasoning sufficiently specific so the weight given is clear to subsequent reviewers.  *Id.*

Here, the ALJ's Decision credited "little weight" to a portion of Dr. Bentrott's opinion and gave another portion of Dr. Bentrott's opinion "no weight."  **(#11 at 23-24)**.  In the Decision, the ALJ stated:

> The undersigned gives no significant weight to the opinion from Kimberly Bentrott, M.D. who opined that the claimant is unable to do a traditional job given the combination of his physical and psychological conditions.  Whether the claimant could perform a job is not a medical opinion, but an issue reserved to the Commissioner.  Further, her opinion was based on impairments that she was not treating the claimant (psychological) and she did not give any functional limitations.
>
> The undersigned gives little weight to the medical source statement from Kimberly Bentrott, M.D.  She opined that the claimant could not sit, stand, or walk even two hours, needed rest breaks one to two hours daily, needed to elevate his legs 25% of the workday to waist level due to swelling, and needed to use an assistive device.  She indicated the claimant would be off task 25% a day and absent more than four days per month.  These restrictions are not confirmed as recommendations for care

> in the treatment notes. They are inconsistent with the overall record. For example, the claimant was not prescribed an assistive device. The record indicates the claimant showed improvement. For example, the claimant's examinations often indicated that he had normal range of motion in his neck and back, a supple neck, an intact sensory examination, or normal gait and station. The claimant generally had normal motor strength in his upper and lower extremities and/or normal muscle bulk and tone.

**(#11 at 23-24)**.

The Commissioner argues that the ALJ properly evaluated Dr. Bentrott's opinion and reasonably found it was inconsistent with her observations that Mr. Roubicek had normal muscle strength, sensation, gait, range of motion, coordination, and no tenderness at certain office visits. **(#17 at 17-19)**.

As an initial matter, the Court agrees that the decision as to whether a claimant can work is reserved to the Commissioner, but that simply means that the conclusion that the claimant cannot work is not binding. The underlying opinions of the claimant's limitations are not rejected; instead, they must be evaluated in the customary two-step analytical process to determine whether such findings (here, Dr. Bentrott's findings) are entitled to controlling weight.

The ALJ did not engage in this analysis, and consequently it constitutes legal error. Such error can be harmless, however, if discussion elsewhere in the Decision include reasons sufficient to reject a treating physician's opinion or to give it less than controlling weight. When an ALJ rejects a treating physician's opinion, he or she must identify specific, good reasons for weight given to the opinion. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). This requires identification of specific evidence in the record that the ALJ found to be inconsistent with Dr. Bentrott's opinion, as well as demonstration that consistent evidence was considered. *See Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996).

As to the first inquiry—whether the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques—the record includes multiple instances where Mr. Roubicek's providers (including Dr. Bentrott) ordered objective medical testing such as MRIs, a sleep study, and laboratory testing. **(#11 at 653-660)**. The record includes MRI and radiograph tests taken in January 2014, prior to Mr. Roubicek's alleged onset date of disability and following a 2013 motor vehicle accident. The tests showed degenerative disc disease of the cervical and thoracic spine. **(#11 at 382-388)**. Then, following the July 2014 accident, Mr. Roubicek had additional MRI testing, which showed further degenerative changes. **(#11 at 484-487)**. Mr. Roubicek underwent additional MRI testing in March 2017. Although the brain MRI was "unremarkable", the spine MRI revealed "multilevel degenerative disc disease and facet arthrosis", which can cause pain and/or numbness and difficulty moving the spine[5]. **(#11 at 759, 761)**. A May 2017 sleep study showed Mr. Roubicek had "severe obstructive sleep apnea with no significant response to oxygen". **(#11 at 671)**. Also, lab test results revealed the presence of hyperthyroidism and the onset of diabetes. **(#11 at 663-664, 785)**.

The record contains no evidence from any medical provider contesting the validity of the objective testing, and the ALJ presumably accepted the findings of the MRIs and the sleep study when she found at step two that Mr. Roubicek had severe impairments of degenerative disc disease, sleep apnea, and headaches among others. **(#11 at 12-13)**. These objective test results are consistent with Dr. Bentrott's observations, diagnoses, and course of treatment of Mr.

---

[5] "Facet Arthropathy (FA) is a painful, arthritic condition of the facet joints. These joints allow for bending, twisting, and alignment of the spine. The spinal nerves come off the spinal cord between the vertebra and the facet joints. … Facet Arthropathy is often associated with chronic low back pain." https://spineconnection.org/back-pain-conditions/facet-arthropathy/

Roubicek from 2016 through the date of the hearing. **(#11 at 649-670, 783-799, 831-836, 858)**. Thus, the Court finds Dr. Bentrott's opinions were supported by medically acceptable clinical and laboratory diagnostic techniques.

The Court now turns to the ALJ's second inquiry—whether Dr. Bentrott's opinion is inconsistent with the other substantial evidence in record. The record contains another medical opinion rendered by a psychological consultative examiner, Anita Gaulthier, Psy.D. at the request of the SSA. On June 15, 2017, Dr. Gaulthier met with Mr. Roubicek and conducted a single diagnostic interview and examination. **(#11 at 686)**. Dr. Gaulthier diagnosed Mr. Roubicek with generalized anxiety disorder with panic attacks and PTSD. She found that his anxiety symptoms to be "triggered by feeling overwhelmed, by social situations, or by trauma-related anxiety triggers, such as being in a car", and he also experiences "flashbacks and nightmares" about the 2014 vehicle accident. **(#11 at 690)**. Dr. Gaulthier opined that these "diagnoses not only hinder [Mr. Roubicek] from engaging in [his past relevant work as a taxi driver], but cause him to feel overwhelmed and anxious in other positions as well. It is likely that the claimant will continue to struggle with these symptoms into the future, and that they may get better and worse with his physical pain and lack of sleep." **(#11 at 690)**. As to Mr. Roubicek's ability to understand, remember and follow instructions, Dr. Gaultier found that "on most days" he would be mildly impaired but this "impairment may increase to a severe level when he is anxious, overwhelmed or triggered regarding the trauma he experienced." **(#11 at 690-691)**. Although the ALJ gave Dr. Gaultier's opinion "little weight" because it "overstates his limitations and is not consistent with the overall record or the examination", the Court finds no inconsistencies with Dr. Bentrott's opinions. Indeed, Dr. Gaulthier's opinion as to his mental

limitations support Dr. Bentrott's opinion that Mr. Roubicek would be off task 25% of each work day and absent at least four days per month.  **(#11 at 23)**.

Additionally, the record includes opinions from nonexamining state agency consultants. The ALJ's Decision gave "great weight" to the agency consultants' opinions -- that Mr. Roubicek (1) could occasionally lift 20 pounds, frequently lift ten pounds, stand and/or walk six hours in an eight hour work day, sit six hours in an eight hour work day, frequently climb ramps/stairs, frequently stoop/crouch, occasionally climb ladders, occasionally kneel/crawl and (2) has moderate limitations in the activities of maintaining attention and concentration, carrying out detailed instructions, and interacting with the public.  **(#11 at 93-99, 100-116)**.   However, in this Circuit, a consulting physician's opinion does not generally constitute substantial evidence.  *See Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988).   Additionally, an examining source opinion "is presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record."   *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

Put simply, the record does not support the ALJ's stated reason for discrediting Dr. Bentrott's opinion—that her opinion as to Mr. Roubicek's restrictions are not supported by her treatment notes and examinations that showed improvement in Mr. Roubicek's condition.  **(#11 at 23-24)**.   The ALJ's Decision found inconsistencies between Dr. Bentrott's opined RFC and the treatment records when Dr. Bentrott observed Mr. Roubicek to have a "normal range of motion in his neck and back, a supple neck, an intact sensory examination, or normal gait and station."   **(#11 at 24)**.   The Court does not find these identified "inconsistencies" to be such, or if properly characterized as inconsistencies, finds them to be insubstantial in light of the whole

15

record. Instead, they appear to be "cherry picking" of instances in the record to find inconsistencies to justify an outcome. An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence," *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), or mischaracterize or downplay evidence to support her findings, *see Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987).

First, Dr. Bentrott's observations relate to Mr. Roubicek's physical condition on a limited, specified date. Given the waxing and waning of the severity of Mr. Roubicek's psychological and physical symptoms over a long period of time, they may well represent a momentary condition, but do not represent the longitudinal condition. In this regard, they are simply snapshots of Mr. Roubicek's physical condition. Dr. Bentrott's treatment notes indicated normal range of motion, a supple neck, and normal gait on certain physical examinations. However, upon a closer review of the treatment record, which documents examinations from 2016 through 2018, there are notes from Mr. Roubicek's office visits with Dr. Bentrott where she noted swelling/edema, neck and back pain, gait problems, shortness of breath, and anxious/nervous mood. **(#11 at 651-661, 782-785, 787-800)**. Clearly, there is conflicting evidence as to Mr. Roubicek's physical examinations over the course of his two-plus years of treatment. However, the ALJ's Decision only referred to the specific records where Dr. Bentrott found normal exam results. **(#11 at 23-24)**. Although this Court may not reweigh the medical evidence and must defer to the ALJ's resolution of evidentiary conflicts, the ALJ's failure to identify any conflicting medical evidence or consider the longitudinal record was improper. *See Hardman*, 362 F.3d at 681; *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008). The findings from limited specific examinations do not adequately present Mr. Roubicek's full

physical and mental health picture.   The ALJ must consider the longitudinal record of Mr. Roubicek's treatment and not select favorable findings from certain office examinations.

Second, Dr. Bentrott's opinions are based on a more recent and much longer treatment period than any other provider noted in the record.   She provided Mr. Roubicek consistent medical treatment from 2016 through the date of the October 2018 hearing for his impairments, and the record contains ample evidence supporting Dr. Bentrott's opined limitations.   Mr. Roubicek's impairments are directly attributed to objective findings—diagnoses of degenerative disc disease, obstructive sleep apnea, hyperthyroidism, diabetes, headaches, anxiety disorder, and PTSD.   Dr. Bentrott's opinions are substantiated by her clinical observations, MRI tests, sleep study data, and lab test results.   Further, Mr. Roubicek's impairments and reliance on numerous medications to manage both physical and psychological symptoms to perform daily activities could certainly support Dr. Bentrott's opined RFC.

There is no evidence in the record to support the ALJ's RFC finding other than the non-treating consultants' assessments.   These assessments alone are insufficient to override a treating physician's conflicting opinion and do not constitute substantial evidence.   *Hamlin*, 365 F.3d at 1219-1220.   In sum, the ALJ's Decision fails to state specific and legitimate reasons[6] sufficient to conclude that Dr. Bentrott's opinion is inconsistent with substantial evidence in the

---

[6]   The Court also finds the Decision's rejection of Dr. Bentrott's opinion because it was based in part on psychological impairments that were outside of her treatment to be inaccurate. The medical records show Dr. Bentrott prescribed and adjusted a course of medications designed to treat Mr. Roubicek's anxiety and PTSD.   **(#11 at 649-670, 783-799, )**.   The Decision further discredits Dr. Bentrott's opinion that Mr. Roubicek walks with a cane due to "insecurity, pain, and weakness" **(#11 at 834)** because there is no record of a prescription for an assistive device. **(#11 at 24)**.   However, the Decision fails to explain or support this reasoning, thus, the Court declines to consider it further.

record[7].  As a consequence, her opinion is controlling and the failure to adopt her functional limitations constitutes reversible error.   Even if not controlling, insufficient justification is given for according little comparative weight to the opinion.

Finally, the Court notes that while the ALJ gave "little weight" to Dr. Bentrott's RFC opinion, the ALJ's own RFC assessment was actually consistent with a portion of Dr. Bentrott's opinion.   Both the ALJ's RFC and Dr. Bentrott's RFC included lifting restrictions of no more than 20 pounds and 10 pounds frequently.   Because the ALJ essentially agreed with a portion of Dr. Bentrott's RFC limitations, the Court finds the ALJ erred in discrediting Dr. Bentrott's opinion "with no explanation at all as to why one part of [the] opinion was creditable and the rest was not.   That is error under this circuit's case law."   *Chapo v. Astrue*, 682 F.3d 1285, 1291-92 (10th Cir. 2012).

The Court finds the Decision's rejection of Dr. Bentrott's opinion contravenes applicable legal standards and that the ALJ's RFC and disability conclusions at step three, four, and five of the sequential analysis are not supported by substantial evidence.   Thus, the finding that Mr. Roubicek is not disabled is reversed, and the matter is remanded for reconsideration on steps three, four, and five of the sequential analysis, applying the proper legal standards to the opinion of Dr. Bentrott and engaging specifically in a determination of whether her opinion is entitled to

---

[7]     The Court also notes the Decision's rejection of Dr. Friedlander's (Mr. Roubicek's treating neurologist) opinion that Mr. Roubicek was capable of low stress work but would be "off task" 10% of a typical work day and he would likely be absent more than four days per month.  **(#11 at 735)**.   The ALJ gave "little weight" to this opinion due to the "unclear" notation.  **(#11 at 24)**.   The regulations provide that an ALJ should recontact a treating physician when the information the physician provides is inadequate for the ALJ to determine whether the applicant is actually disabled.   20 C.F.R. § 404.1512(e).   In this circumstance, it certainly appears appropriate for the ALJ, on remand, to recontact Dr. Friedlander for clarification as to her opinion.

controlling or deferential weight. Thus, the Court need not reach Mr. Roubicek's other specific claims of error in the ALJ's analysis. The Court expresses no opinion as to the ultimate determination of whether Mr. Roubicek is or should be found to be disabled.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's Decision is **REVERSED AND REMANDED.** Upon reconsideration, the Commissioner shall consider all pertinent evidence through the 2018 hearing date. Judgment shall enter in favor of Mr. Roubicek.

Dated this 25th day of March, 2021.

BY THE COURT:

Marcia S. Krieger
Senior United States District Judge